IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **JENNIFER R. BROWNING, and** ) <br> **RONELLA S. LALOG** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **GCA SERVICES GROUP** ) <br> ) <br> **Defendants.** ) | **Case No. 12-2258-MPM-DGB** <br><br> **Jury Trial Requested** |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR STRIKE

NOW COMES the plaintiffs, JENNIFER R. BROWNING and RONELLA S. LALOG, by and through their attorney, GERALD W. SMITH, and in opposition to the Motion to Dismiss submitted by the Defendant, GCA SERVICES GROUP, states as follows:

### INTRODUCTION

Plaintiffs filed a four count Complaint against Defendant GCA Services Group.  Count I contains an allegation of  Defendant's violation of Title VII discrimination (National Origin) against Plaintiff BROWNING.  Count II contains an allegation of  Defendant's violation of Title VII discrimination (National Origin) against Plaintiff LALOG.  Count III alleges Intentional Infliction of Emotional Distress (IIED) against Plaintiff BROWNING.  Count IV alleges IIED against Plaintiff LALOG.

Although Plaintiffs allege timely filing of charges with the EEOC, Plaintiffs neglected to include those EEOC charge documents (Form 5 – Charge of Discrimination) with their Complaint.  Defendant, however, has attached copies of Plaintiffs' charge documents along with their Motion to Dismiss and the documents are also included with this Memorandum.

1

Plaintiffs were not represented by any attorney when they completed their EEOC Intake Questionnaire in December 2011 (see Exhibits 1-2).  Nor were they represented by any attorney when they signed their EEOC Form 5 in late December 2011 (see Exhibits 3-4).

The United States EEOC and the Illinois Department of Human Rights (IDHR) are parties to a cooperative agreement (see Exhibits 5-6).  Under this agreement, when a party files a charge of discrimination with the EEOC, a copy of the charge is automatically filed with the IDHR.  Even though there is automatic cross-filing, Plaintiffs both filed a separate intake forms with both agencies. Plaintiffs were not represented by any attorney when they signed and submitted their Employment Complainant Information Sheet to the IDHR in December 2011 (see Exhibits 7-8) and their IDHR Charge of Discrimination documents in April 2012 (see Exhibit 10).

The only instructions provided to the Plaintiffs from the EEOC regarding the EEOC Form 5 included no instruction or explanation as to what "Continuing Action" is (see Exhibit 11 for representative form letter).  Nor does the brochure provided by the EEOC along with the charge sheets indicate anything about "Continuing Action" (see Exhibit 12).  The only instructions provided to the Plaintiffs from the IDHR regarding the IDHR Charge of Discrimination documents included no instruction or explanation as to what "Continuing Action" is (see Exhibit 13 for representative form letter).

Plaintiff BROWNING resigned from her employment on March 9, 2012.  Plaintiff LALOG resigned from her employment on March 2, 2012.

On September 21, 2012, the EEOC issued to both Plaintiff BROWNING and Plaintiff LALOG a Notice of Right to Sue (see Exhibits 15-16).

Defendants filed a Motion to Dismiss Plaintiffs' Claims of Constructive Discharge in Counts I & II and Plaintiffs' Claims of Intentional Infliction of Emotional Distress in Counts III & IV Pursuant to Fed. R. Civ. P. 12(b)(6), or Alternatively, Motion to Strike Pursuant to 12(f). This document is provided in opposition to the Defendant's Motions.

## ARGUMENT

**I.     Standard for Motion to Dismiss under Federal Rule 12(b)6).**

Federal Rule 12(b) states:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted. . . .

> Fed. R. Civ. P. 12(b)

Federal Rule 8(a) states:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief. . . .

> Fed. R. Civ. P. 8(a)

"Although under federal notice pleading, Plaintiff is not required to plead extensive facts, factual allegations must be enough to raise a right to relief above the speculative level." (internal quotation marks omitted) *Bonar v. Ray* No. 09-cv-1185, March 22, 2011 (C.D. Ill. 2011), quoting *Bell Atlantic Corp. v. Twomby*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  To avoid dismissal, a plaintiff's complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff

3

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

II. **The charges listed on the EEOC and IDHR charge sheets provided sufficient notice to the respondent/defendant of discrimination based on national origin due to the English-only policy.**

As a general rule, a Title VII plaintiff may bring only those claims that were included in the EEOC charge. *Cheek v. Western & Southern Live Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). However, Title VII is to be construed and applied broadly, and that a single charge may launch a full scale inquiry into racial discrimination." (internal quotations omitted). *Taylor v. Western & Southern life Ins. Co.* 966 F.2d 1188, 1195 (7th Cir. 1992), quoting *Motorola, Inc., v. McLain*, 484 F.2d 1339, 1334, 1346 (7th Cir. 1973). A plaintiff may also bring a claim that is "like or reasonably related to the allegations of the charge and growing out of such allegations." *Moore v. Vital Products Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011) citing *Jenkins v. Blue Cross Mutual Hospital Ins., Inc.* 538 F.2d 164 (7th Cir.) (en banc), cert. denied, 429 U.S. 986, 97 S. Ct. 506 (1976). The Seventh Circuit has held that this standard is met "if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 501. "[C]laims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Id.* at 501. This "reasonably related" exception was created to allow plaintiffs to pursue claims without succumbing to "procedural technicalities." *McKenzie v. Illinois Dept. of Transportation*, 92, F.3d 473, 482 (7th Cir. 1996).

4

Therefore, just because an allegation in BROWNING's and LALOG' Complaint is not specifically listed on their respective EEOC Form 5, their allegation should not automatically be dismissed.

    **(a)    The Discrimination was Continuing even though the "Continuing Action" Box on the EEOC Form 5 (Charge of Discrimination) was not Checked.**

Because the EEOC charge is often completed by laypersons rather than lawyers, "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek*, 31 F.3d at 500.

> [T]he Civil Rights Act is designed to protect those who are least able to help themselves. Complaints to the EEOC are seldom lawyers. To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected.

*Jenkins*, 538 F.2d at 168

For the current case, Plaintiffs BROWNING and LALOG, both laypersons and without the assistance of any attorney, submitted their EEOC Intake Questionnaires and within a few weeks received their Charge of Discrimination documents to sign. Both claimants' EEOC Form 5 contain basically the same statements, even though significantly more information was provided by BROWNING in her EEOC Intake Questionnaire. Neither Plaintiff's EEOC Form 5 had the box "Continuing Action" checked. One should note that the transmittal letter from the EEOC (see Exhibit 11) (and subsequently, the transmittal letter from the IDHR (see Exhibit 13)) do not define or even address what a "Continuing Action" is. Nor is there any information regarding a "Continuing Action" contained in the EEOC Brochure, "What You Should Know Before You File A Charge With EEOC" (see Exhibit 12), which was also provided to each Claimant/Plaintiff. Thus, a layperson would have no idea of what "Continuing Action" would

5

mean. Since the form was already typed out for the claimants, by experts at the EEOC, and not recognizing anything incorrect, both claimants, being laypersons, trusted the expertise of the EEOC case worker, and seeing nothing incorrect, signed the Charge documents and submitted the documents to the EEOC. Thus, even though the "Continuing Action" box was not checked, the discrimination claimed on the EEOC Charge document was, in actuality, continuing every day the plaintiffs worked.

    **(b)    Allegation of Hostile Work Environment is Related to and Grew out of Plaintiffs' Charge of Discrimination based on National Origin due to the English-Only Rule.**

EEOC guidelines state "A rule requiring employees to speak only English at all times in the workplace is a burdensome term and condition of employment. . . . Prohibiting employees at all times, in the workplace, from speaking their primary language or the language they speak most comfortably . . . may also create an atmosphere of inferiority, isolation and intimidation based on national origin. . . ." 29 C.F.R. § 1606.7  Thus, the EEOC itself recognizes the potential of an English-only rule creating a hostile work environment.

While the EEOC's guidelines are not controlling, courts agree that they are nonetheless entitled to respect, not as interpretations of the governing law, but as an indication of what a reasonable, informed person may think about the impact of an English-only work rule on minority employees. *Maldonado v. City of Altus*, 443 F.3d 1294, 1305-6 (10th Cir. 2006). The administrative interpretation of the Civil Rights Act of 1964 by the EEOC as enforcing agency is entitled to great deference. *Griggs v. Duke Power Company*, 401 U.S. 424, 433-34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

A recent Tenth Circuit decision held that to survive summary judgment on a claim alleging a racially hostile work environment, the plaintiff must show that a rational jury could

6

find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the victim was targeted for harassment because of her race or national origin. *Morris v. City of Colo. Springs*, 666 F.3d 654, 663-64 (10th Cir. 2012). Since National Origin is so closely related to race, one could infer that the same would be true for discrimination and harassment based on national origin.

The Supreme Court in *Harris* stated, "[There] is not, and by its nature cannot be, a mathematically precise test" for a hostile work environment claim. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993). Courts determine whether an environment is hostile or abusive by looking at such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. The Tenth Circuit stated, "The applicable test for a hostile work environment has both objective and subjective components. A dual standard asks both whether the plaintiff was offended by the work environment and whether a reasonable person would likewise be offended, and both must be proved." *Morris*, 666 F.3d at 664.

The Plaintiffs in the current case were obviously offended by the work environment, otherwise, they would not have filed their discrimination charges and resigned, and it is likely that a reasonable person would likewise be offended.

Another Tenth Circuit decision found a workplace permeated with discriminatory intimidation, ridicule, and insult was sufficiently severe or pervasive to alter the plaintiff's conditions of employment. *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 958 (10th Cir. 2012). The same would be true with the current case. Being forced to work each and every day

in an environment where the employee is prohibited from speaking in her native language, and living with the threat of termination on a daily basis whereby even a slight unconscious slip into the language with which the Plaintiffs are most comfortable, would alter the plaintiffs' conditions of employment.

The Tenth Circuit found that English-only instructions can create a hostile atmosphere for Hispanics in their workplace and thus violate Title VII. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160 1170 (10th Cir. 2007), citing *Maldonado v. City of Altus*, 443 F.3d 1294, 1304 (10th Cir. 2006). The *Maldonado* court held that an English-only policy, which applied at all times to all employees regardless of occupation or activity, may have created a hostile work environment. *Maldonado*, 443 F.3d at 1304.

Therefore, pursuant to *Harris, Morris, Hernandez, Montes,* and *Maldonado*, the English-only rule established by the Defendant in the current case could easily have, and did, create a hostile work environment. Then, pursuant to *Cheek, Taylor, Moore, Jenkins*, and *McKenzie*, the plaintiffs' allegations of a hostile work environment would have been discovered by the EEOC during its investigation, and thus would have grown out of the EEOC claim. Remember, the EEOC had the Intake Questionnaire forms which contained more details than what the EEOC had actually typed onto the EEOC Form 5 for the Claimants/Plaintiffs to sign. Furthermore, any discussion with the Claimants/Plaintiffs during an EEOC investigation would have provided evidence of a hostile work environment due to the English-only rule. The hostile work environment would have been generated by the English-only rule and would have involved the same parties. Even though the EEOC Charge document does not identify the parties involved, they were clearly and specifically identified in the EEOC Intake Questionnaire. Furthermore, even though not included on the EEOC Form 5, the discrimination due to the hostile work

8

environment was continuing every day the plaintiffs worked. The hostile work environment alleged in the complaint was reasonably related to and grew out of the English-only rule and claims of national origin discrimination contained on the EEOC charge document and therefore should not be dismissed or stricken.

**(c)    Allegation of Constructive Discharge**

In order to show that a hostile work environment resulted in a constructive discharge, a plaintiff must not only demonstrate that a hostile work environment existed, but also that the abusive working environment was so intolerable that her resignation was an appropriate response. *Herron v. Daimler Chrysler*, 388 F.3d 293, 303 (7th Cir. 2004).

A constructive discharge involves both an employee's decision to leave and precipitating conduct. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004). In *Suders*, the Supreme Court implies that the constructive discharge can grow out of the precipitating conduct. Since the precipitating conduct (i.e., English-only rule) was sufficiently addressed in the Plaintiffs' EEOC charges, the Defendant had sufficient notice of the precipitating conduct, an investigation into the implementation of that rule would have revealed the adverse impact that English-only rule was having on the Plaintiffs. Thus, there is a nexus that the Plaintiffs' constructive discharges grew from the EEOC charge of discrimination based on the English-only rule. Since the Defendant had notice of the precipitating conduct (i.e., implementation of the English-only rule and the potential adverse impacts to the workers) (NOTE: the Defendants did have official notice via the Plaintiffs' EEOC charges filed in early January that the English-only policy was adversely affecting the Claimants) that they did absolutely nothing to correct that conduct, it would not be unlikely that an employee would decide to leave that employment.

In *Taylor v. Western & Southern life Ins. Co.* 966 F.2d 1188 (7th Cir. 1992), the court found that a continuing pattern of discrimination existed as background to justify the plaintiff's decision to resign. The earlier events (i.e., those contained in his EEOC charge) were sufficiently related to the later events (i.e., those not contained in his EEOC charge) to allow the plaintiff to use them as background facts to meet his burden of proof that he was reasonable in interpreting the later events as discriminatory and compelling him to resign. *Id.* at 1196.

Today's case is analogous to what the court saw in *Taylor*. The Defendant did not change the policy – the policy was in place from the time it was announced to the Plaintiffs in November and December 2011 until they could not stand it anymore and felt compelled to resign. Therefore, the continued threat of termination for the women is directly related to the threat that was conveyed to the women in November and December 2011 and grew from the discrimination based on national origin (i.e., English-only rule).

Connecting to the discussion in (a) and (b) above, if there is a hostile work environment, it is logical that a constructive discharge may ensue as a result of that hostile work environment. Workers cannot be expected to work for long with a threat of termination hanging over their heads if they speak in the language that is natural and more comfortable to them. A slight slip-up or lapse into the more comfortable native tongue could result in termination. This constant fear is what these women had to live with every day. Ultimately, it was too much for them, and they felt quitting was their only option.

The stress experienced by the Plaintiffs every day at the work place would be akin to that which would be experienced if the English speaking employees were prohibited from speaking in their native language, as well. A workplace where English speaking employees are prohibited from speaking in English would generate immense levels of distress, more than a reasonable

person would be able to tolerate, and would likely result in numerous resignations based on an intolerable working environment.

Being that the Plaintiffs were laypersons, without the assistance of any attorney when they filed their EEOC charges and when they terminated their employment, they were unaware that they would have to file another separate charge against their employer for constructive discharge.  However, since an allegation of constructive discharge is sufficiently related to the charge listed in the EEOC Form 5 and grew out of the discriminatory English-only rule, Plaintiffs believe there is a sufficient nexus to deny the motion to dismiss or strike the Plaintiff's constructive discharge allegation.

Additionally, although the Plaintiffs requested on or about August 7, 2012 a copy of their personnel file pursuant to Illinois law (820 ILCS 40/2) (see Exhibits 16-17), they have yet to have received said personnel records.  The statute states: "The employer shall provide the employee with the inspection opportunity within 7 working days after the employee makes the request or if the employer can reasonably show that such deadline cannot be met, the employer shall have an additional 7 days to comply."  These employee records may present evidence of retaliatory or harassing conduct by Defendant which may have assisted Plaintiffs in their decision to resign from employment.

**III      Intentional Infliction of Emotional Distress**

As to the Defendant's Motion to Dismiss Counts III and IV for IIED, Plaintiffs concede to dismissal because the allegation of IIED is preempted by the Illinois Human Rights Act.  The Plaintiffs' allegation of IIED is tied only to their claim of discrimination based on national origin.  This discrimination claim would fall under the purview of the Illinois Human Rights Act and would therefore be preempted.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Plaintiffs BROWING and LALOG respectfully request of the court the following:

a. To DENY Defendant's Motion to dismiss or strike Plaintiff BROWNING's claim of constructive discharge in Paragraphs 16 and 26 of her Complaint; and DENY Defendant's Motion to dismiss or strike Plaintiff BROWNING's requested relief for lost earnings.

b. To DENY Defendant's Motion to dismiss or strike Plaintiff LALOG's claim of constructive discharge in Paragraphs 19 and 34 of her Complaint and to similarly DENY Defendant's Motion to dismiss or strike Plaintiff LALOG's requested relief for lost earnings.

c. To GRANT Defendant's Motion to dismiss Counts III and IV because they are preempted by the Illinois Human Rights Act.

                              Respectfully submitted,

                                s/Gerald W. Smith
                              GERALD W. SMITH
                              Attorney for the Plaintiff

SMITH LAW FIRM, P.C.
1002 Commercial Drive, Suite #5B
P.O. Box 46
Mahomet, IL  61853
(217) 586-3700
(217) 586-3755 (fax)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 8, 2013, he electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Tamara K. Hackmann
Heyl, Royster, Voelker, & Allen
102 E. Main Street, Suite 300
P.O. Box 129
Urbana, IL  61803-0129
(217) 344-0060
(217) 344-9295 (fax)
email: thackmann@heylroyster.com

    s/Gerald W. Smith
GERALD W. SMITH
Attorney for Plaintiff

SMITH LAW FIRM, P.C.
1002 Commercial Drive, Suite #5B
P.O. Box 46
Mahomet, IL  61853
(217) 586-3700
(217) 586-3755 (fax)